## MUREDDU, Etc., AND THE TRAVELERS INSURANCE CO. *v.* GENTILE

[No. 65, September Term, 1963.]

*Decided January 3, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Mathias J. DeVito* and *Philip T. McCusker,* with whom were *Piper & Marbury* on the brief, for appellants.

*Harold Buchman,* with whom were *David Friedman* and *Charles A. Friedman* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

In this Workmen's Compensation case, the employer and insurer appeal from a judgment of the Baltimore City Court in favor of the claimant based upon a finding by a jury that she had sustained a total permanent disability as a result of an accident arising out of and in the course of her employment. The appellants contend that the trial judge should have directed a verdict in their favor on these two grounds: first, that the evidence not only fails to show that the claimant is unable to do any work of any kind, but affirmatively shows that she is capable of doing work of a sedentary nature and hence is not totally disabled under the Workmen's Compensation Act of Maryland (the Act); and second, even if she were physically incapable of work of any kind, her entire disability is confined to the partial loss of use of one leg, and she is entitled to compensation only for such loss under the schedule contained in Sec. 36(3) of the Act.

The claimant fell and injured one knee in September, 1957, while she was working as a cook at the employer's restaurant. She continued work for a period of one or two months, or possibly longer, and received care first from her own doctor and later from a physician designated by the compensation insurance carrier. In October, 1958, the Workmen's Compensation Commission awarded the claimant compensation for temporary total disability for the period from January 7 to June 2, 1958, and thereafter for permanent partial disability for a 10% loss

of use of her right leg. By March, 1959, her condition had grown worse and she was given a brace and cane. In October, 1959, her compensation award was increased by the Commission to an award for a 35% loss of use of the right leg. In 1961 she filed a petition for a further modification, claiming permanent total disability. This petition was dismissed and she appealed to the Baltimore City Court. While her appeal was pending, she had an operation for the removal of diseased bone and cartilage from her knee. This operation appeared to have checked further deterioration of the knee, but not to have brought about any marked improvement.

There was testimony that the claimant experienced pains in her knee of varying degrees of intensity, that pain increased on standing or walking when the knee would swell, and that she could not even remain seated in one position for long because of the pain. She testified herself that she could not do any work, that she could not sit up for any length of time and do any work, and that she could not sit still for more than twenty minutes.

Dr. Sharp, a medical expert called by the claimant, testified in response to a question as to his prognosis with regard to her condition: "I felt that it was over three years after the injury, that she was maximally improved. I felt she was unable to perform adequately at any gainful occupation requiring standing or walking. I felt the knee condition itself constitutes approximately 50 percent permanent partial disability of the right leg, yet, because of the peculiar nature of the knee and its effect upon her person as a whole, experiencing radiating pains from it throughout the body, as well as its own disabling features, she is prevented from performing any occupation within her capabilities. * * *."

The court inquired whether he was about to get into the realm of psychiatry, and he replied: "It is a final statement as to my opinion, which I have already stated in the first sentence again, about the performance of gainful occupation. It is a statement that I mentioned at first; it is that she is unfit to perform any gainful occupation and is considered permanently, totally disabled as a whole."

On cross-examination, Dr. Sharp was asked what he meant

by her being "prevented from performing any occupation within her capabilities." He replied: "This is a lady who has been doing work of somewhat of a physical nature; she has been a cook, and she has to stand up to do that. That she can not do any longer. If it is possible through leniency of an employer and otherwise to allow her to do something that she can sit and stand and change her position for comfort and not work full time, that might come within her capabilities in addition, but not within her capabilities if it is a full day's work as required by ordinary employers."

Another medical expert whose services were furnished to the claimant by the appellants, did not testify in court, but stated (in part) in a report to the insurance carrier submitted in May, 1961, and contained in the record before the Commission which was offered in evidence: "I find nothing on recent examinations to feel that there is any increase in disability in this case [which he fixed at a 25% loss of use of the leg] *though resumption of any type of work is very improbable.*" (Emphasis supplied.)

This Court has held that under our Act, total permanent disability means incapacity to do work of any kind. *Jewel Tea Co. v. Blamble,* 227 Md. 1, 174 A. 2d 764; *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A. 220. There was some evidence, in addition to what is included in that set forth above, that the claimant could do sedentary work, and there was also evidence that at some time in the past the claimant had worked in a factory where she was engaged in sewing shirts. The question before us is not whether we might have concluded that she was capable of doing some sedentary work, but is whether there was evidence from which the jury could reach a contrary conclusion. We are unable to say that there was not such evidence. The jury could, we think, on the basis of the claimant's own testimony and on the medical evidence, reach the conclusion that because of her injury and the continuing pain resulting therefrom she could not engage in even sedentary employment.

The appellants' second contention is that, even if the claimant be entitled to any compensation, it is limited to the scheduled benefit for the partial loss of use of her leg.

Section 36 (1) (a) of the Act specifies the amount of compensation payable for total disability, and further provides that:

"Loss or loss of use of both hands, or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases total disability shall be determined by the facts."

Section 36 (3) of the Act deals with "disability partial in character but permanent in quality." Clause (b) of Sec. 36 (3) contains a schedule of benefits, including compensation for the loss of a leg; and clause (c) provides in part that permanent loss of the use of a leg shall be considered as the equivalent of the loss of the leg. Section 36 (4), the so called "Other Cases" subsection, like Sec. 36 (3), deals with disabilities partial in character, but permanent in quality.

A similar, though not identical, question to that now before us was presented in *Congoleum Nairn, Inc. v. Brown, supra,* where the claimant had suffered a previous injury resulting in the loss of two fingers on one hand and later suffered the injury involved in that case, which was the loss of three fingers from the other hand. The judgment for the claimant was reversed because under an instruction of the trial court, although the jury might have considered the claimant able to perform the duties of some occupations, as testified, he was to be compensated as totally disabled if the work for which he was previously qualified was of a higher grade or materially different in other respects. However, the case was remanded for a new trial on the question of whether or not the claimant had in fact suffered total permanent disability through the maiming of both his hands to the extent that the injured man had lost the power to grip effectively with either, and the court expressed the view that the evidence was sufficient to permit the jury so to find. In an opinion by Chief Judge Bond, the court stated the rules applicable on the new trial to the determination of the question of total disability, saying in part: "The statute does not limit compensable total disability to that which might result from loss of both hands, or loss of use of both hands. It

specifies those and a few other injuries as constituting total disability in the absence of proof to the contrary, and then recognizes the possibility of total disability by reason of other injuries in providing that, 'in all other cases permanent total disability shall be determined in accordance with the facts.' And this seems to leave, as the final question in this case: whether a present injury, which would on a whole man entail only a partial disability, is, when it deprives an impaired man of all his remnant of capacity, to be compensated under the statute as one entailing total disability? * * * The act does not contain any provisions explicitly settling the question now considered. And in the specification of various bodily injuries and the compensation for each one, under the head of 'Permanent Partial Disability,' there seems to be nothing to exclude a classification of the results of an accident as permanent total disability, if to a particular workman there should be a total disability. After weighing the arguments on both sides, this court adopts the construction that the consequences to the particular workman determine the degree of disability, so that if an injury deprives him of all the capacity he has left after a previous accident, that result might be classed as total disability from the injury. And, as has already been said, we have concluded that a jury might find in this case that the claimant was in fact so totally disabled." 158 Md. 290-91.

This reasoning, we think, is controlling here. We see no basis for distinguishing between an injury to one member which results (as the jury here found that it did) in total permanent disability and a subsequent injury to one member which, combined with a prior injury to another member, results (as it was held in *Congoleum Nairn, Inc.* that it might) in total permanent disability. Total permanent disability, we think, falls squarely under Sec. 36 (1)(a) of the Act, and is not governed by the rules applicable to partial permanent disability under the schedules contained in Sec. 36 (3). Cf. *Lisowsky v. White,* 177 Md. 377, 9 A. 2d 599, where this Court said: "[I]f the loss or injury to the entire hand is greater than that limited to the aggregate loss of the fingers, then it would seem but just that the higher measure of damages should be applied, because

after all, it is adequate compensation that the law seeks to afford." See also 2 Larson, *Workmen's Compensation Law,* Sec. 58.20, pp. 44-45, where the author states: "The great majority of modern decisions agree that, if the effect of the loss of the member extends to other parts of the body and interferes with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg."

Larson concedes, *op. cit. supra,* § 58.20, p. 45, that a majority of cases involving an uncomplicated loss of a scheduled member limit recovery to what is provided by the schedule, notwithstanding that the employee may be totally disabled under other tests. He then urges, however, that this result is erroneous and points out that the "usual statute provides for both total disability and specific loss of a leg, without expressly saying that either shall be exclusive of the other." He suggests that it may be argued—and, we think the argument is sound— "that, since the act must be given a liberal construction, destruction of the more favorable remedy should not be read into the act by implication in a case where claimant is able to prove a case coming under either heading." He would not (same section, p. 46) make any distinction turning on physical extension of the effects beyond the lost member. We suppose that under our statute (Sec. 36 (3)(c) of the Act) the same rule would be applicable to a case of the loss of use, as distinguished from the loss, of a member.

Though there are cases in other states to the contrary of the view which we adopt, we believe that the rule urged by Larson is the preferable rule. It accords both with our statute and with the reasoning of *Congoleum Nairn.* It also accords with the views of Judge Tucker set forth in a memorandum opinion in the case of *Creamer v. M. W. Kellogg Co. and Travelers Insurance Co.,* in the Baltimore City Court, decided February 9, 1961. See also *Johnson v. Anderson,* 217 S. W. 2d 939 (Tenn.) and *Cox v. Black Diamond Coal Mining Co.,* 93 F.

Supp. 685 (D. C. Tenn.) which reach the same result under the Tennessee's Workmen's Compensation Act. Though the meaning of total permanent disability under that Act may be more favorable to the claimant than our interpretation of the term under our statute (see *Congoleum Nairn* and *Blamble, supra*), once the test of total permanent disability is met under the applicable statute, the same rules of statutory construction are operative to determine whether compensation should be allowed for such a disability or should be limited to compensation for a scheduled loss. There is nothing in our statute which says that a scheduled loss necessarily involves only partial permanent disability. The reasoning of *Congoleum Nairn,* we think, makes it clear that a scheduled loss may support an award for total permanent disability, under Sec. 36 (1) of the Act, if the evidence is sufficient to show total permanent disability in fact.

*Judgment affirmed; the costs to be paid by the appellants.*