624 A.2d 1274

**MONTGOMERY COUNTY, Maryland**

v.

**Paul A. BUCKMAN.**

**No. 661, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

May 26, 1993.

Charles L. Frederick, Asst. County Atty. (Joyce R. Stern, County Atty. and Joann Robertson, Senior Asst. County Atty., on the brief), Rockville, for appellant.

George Wiszynski (Carey R. Butsavage, Butsavage & Associates, P.C., William W. Thompson, II, Aaron M. Nisenson and Zwerdling, Paul, Leibig, Kahn, Thompson and Driesen, on the brief), Washington, DC, for appellee.

Argued before BISHOP, BLOOM and MOTZ, JJ.

BISHOP, Judge.

Appellant, Montgomery County ("the County"), awarded Appellee, Paul A. Buckman ("Buckman"), a partial service-connected disability retirement upon the recommendation of the County's retirement system administrator ("the Administrator"). Buckman appealed the Administrator's decision to the Montgomery County Merit System Protection Board ("the Board") which sustained the Administrator. Buckman then appealed to the Circuit Court for Montgomery County. The circuit court reversed the Board's decision and awarded Buckman full disability retirement benefits. The County filed an appeal to this Court.

### *Issues*

The County presents the following issues which we restate as follows:

I.   Whether Montgomery County Code §§ 2A–2(c) and 33–15(b) provide a right of appeal to the Court of Special Appeals from a decision of the Circuit Court for Montgomery County.

II.   Is an employee who sustains an occupational injury and otherwise meets the requirements of Montgomery County Code § 33–43(e) entitled to full disability retirement benefits under § 33–43(h)(1) if he is incapacitated for duty, yet capable of performing certain job duties.

## Facts

Buckman began working for Montgomery County as a liquor clerk in October 1978. In September 1985, Buckman sustained a work-related back injury. After being placed on "light duty" for a short period of time, Buckman resumed full duties. In January 1988, Buckman aggravated his back injury when he lifted a case of liquor from a conveyor belt. Buckman underwent back surgery—a partial hemilaminectomy and excision of herniated disc—a week later.

Buckman returned to work on light duty in March 1988 and remained on light duty until the Fall of 1989. After Buckman resumed full duties, he experienced back pain radiating down his left leg, and numbness in his left toes. At the suggestion of his neurosurgeon, John W. Barrett, M.D., Buckman applied for disability retirement on February 15, 1990. Buckman knew his employer had a policy limiting the period to six months that an employee could remain on light duty. In a supplementary neurosurgical report, Dr. Barrett stated that "[i]n view of [Buckman's] ongoing symptoms[,] I would feel that he should consider a disability retirement at this time. Unless he can be maintained in some occupation where he does not have to do repeated bending, lifting, etc., I feel certain that his symptoms will continue to recur." Dr. Barrett rated Buckman's disability as "Class 3—Slight limitation of functional capacity; capable of light work (35–55%)."

After Buckman applied for disability retirement, he was again placed on light duty. Donald R. Boelke, M.D. performed an independent medical examination of Buckman on April 27, 1990. Dr. Boelke opined that Buckman "would [not] be able to return to the liquor business, lifting and particularly shifting boxes...." He added: "perform[ing] his usual occupation as a liquor store clerk would certainly be under diress [sic] and be resultant [sic] in a recurrence of his severe symptoms." Dr. Boelke rated Buckman's "permanent physical impairment" at fifteen percent. He nevertheless stated that Buckman is "markedly disabled particularly from heavy physical type of work." Clifford Hinkes, M.D. also rated

Buckman's disability at fifteen percent after his independent medical examination of Buckman on November 16, 1988.

Buckman's responsibilities as a liquor clerk included the sale of alcoholic beverages and related clerical and custodial duties. The minimum qualifications of the position require, among other things, the ability to "independently move by lifting and/or pushing single and case items weighing up to 40 pounds." Buckman was capable of performing clerical work; typing; answering questions and handling "fairly difficult questions when dealing with the public;" selling liquor; operating a cash register; making bank deposits; cleaning up merchandise depending on the extent of bending required; operating a vacuum cleaner depending on how heavy the vacuum cleaner is; sweeping a floor; filling out special order forms, sales summaries and inventory lists; training part-time employees; and operating an adding machine and calculator.

Buckman's partial service-connected disability retirement became effective August 11, 1990. The County did not give Buckman the option to work in another position. Buckman contacted the County's Handicapped Assistance Program and attempted to find alternative county employment. He was unsuccessful, however.

Relying on the opinion of Dr. Boelke, the Administrator rated Buckman's permanent physical impairment at fifteen percent. At Buckman's request, a hearing was held on December 20, 1990. The hearing examiner concluded that Buckman "is not able to perform all the duties of a liquor store clerk" and his "permanent partial incapacity should be 35%." After reviewing Montgomery County Code § 33–43(e) and concluding that under Rule 8–114(a) *Montgomery County v. Whittaker*, No. 1466, Sept. Term, 1981 (unreported per curiam opinion filed August 3, 1982), could not be cited as authority, the hearing examiner determined "that an employee who is not able to perform all of the duties of his classification can still be found to be partially incapacitated, and thus can be awarded a partial service-connected disability retirement." Buckman filed an appeal to the Board, which summarily affirmed the decision of the hearing examiner.

Buckman then filed an appeal to the Circuit Court for Montgomery County. The circuit court determined *Whittaker* was applicable, and concluded that, although Buckman "can still perform some of his prior duties, he is nevertheless totally incapacitated since he cannot perform all of the duties necessary to maintain his employment as liquor store clerk." The court reversed the decision of the Board and ordered the award of full disability retirement benefits.

## *Discussion*

### I

The County, apparently under the impression that Buckman is challenging our exercise of subject matter jurisdiction over this appeal, asks us to decide whether the County has a right to appeal from the circuit court's judgment. Buckman does not address this issue in his brief, and therefore we shall assume Buckman does not contest the propriety of our review. Accordingly, we shall not address the merits of this issue.

### II

On appeal, the determination of an administrative agency is entitled to great deference. "Our duty is to determine whether the decision[ ] of the [agency was] arbitrary or capricious.... If the conclusion reached [in this case] ... is supported by sufficient evidence *and is based upon a proper construction of the law,* the conclusion is neither arbitrary nor capricious." *Hackley v. Mayor of Baltimore,* 70 Md.App. 111, 116, 519 A.2d 1354 (emphasis added) (citations omitted), *cert. denied,* 300 Md. 277, 477 A.2d 1174 (1987). If, however, "the agency's decision is based on an erroneous conclusion of law," "[t]he reviewing court ... may substitute its judgment for that of the agency concerning questions of law." *Mayor of Ocean City v. Purnell–Jarvis, Ltd.,* 86 Md.App. 390, 402, 586 A.2d 816 (1991).

The focus of this appeal is the construction of § 33–43(e) of the Montgomery County Code (1984, as amended) which provides in pertinent part:

*Service-connected disability retirement.* A member may be retired on a service-connected disability retirement if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate result of an accident occurring ... while in the actual performance of duty....

(2) The member is unable to perform the duties of the occupational classification to which assigned at the time disability occurred or a position of comparable status within the same department, if qualified.

Once it is determined the employee is eligible for a service-connected disability retirement, the amount of the pension is determined according to § 33–43(h).

*Amount of pension at service-connected disability retirement.* The yearly amount of pension payable upon retirement for service-connected disability equals:

(1) Total Incapacity.

a. 2 percent of final earnings, multiplied by years of credited service, up to a maximum of 36 years, plus sick leave credits, but not less than 66⅔ percent of final earnings, if the member is totally and permanently incapacitated.

\* \* \*

(2) Partial incapacity. 6 percent of final earnings for each 10 percent of permanent disability, but not less than 25 percent of final earnings, if the member is partially and permanently incapacitated....

Thus, Buckman's annual pension would be no less than sixty-six and two-thirds percent of his final earnings if the injury rendered him "totally incapacitated for duty," or only twenty-five percent of his final earnings if the injury rendered him "partially and permanently incapacitated for duty."

The County argues the circuit court erred in concluding that Buckman was entitled to full benefits under § 33–43(h)(1). First, the County acknowledges that in *Whittaker* we held that an employee who is totally incapacitated for duty, though not totally disabled from any gainful employment, is entitled to full disability retirement benefits. The County points out,

however, that the court erred when it expanded our holding in *Whittaker* to mean that, even though the employee may perform a majority of his job duties, anytime he can no longer perform all of his job duties, he is totally incapacitated for duty. As a result of this error, the County argues the court improperly concluded that the issue in *Whittaker* is identical to the issue *sub judice*. The County also contends that the court's misinterpretation of *Whittaker* led to its second error—the court engaged in judicial legislation when it rendered the phrase "or partially or permanently incapacitated for duty" in § 33-43(e)(1) surplusage and meaningless. Finally, the County alleges the third error occurred when the lower court substituted its judgment for that of the Administrator, the hearing examiner, and the Board by reversing the prior finding that Buckman was only partially incapacitated for duty and instead holding that he was "totally incapacitated" for duty. We shall address each contention in turn.

### A

Rule 8-114 provides:

(a) **Not Authority.**—An unreported opinion of the Court of Appeals or Court of Special Appeals is neither precedent within the rule of stare decisis nor persuasive authority.

(b) **Citation.**—An unreported opinion of either Court may be cited in either Court *for any purpose other than as precedent within the rule of stare decisis or as persuasive authority.* In any other court, an unreported opinion of either Court may be cited only (1) when relevant under the doctrine of the law of the case, res judicata, *or collateral estoppel,* (2) in a criminal action or related proceeding involving the same defendant, or (3) in a disciplinary action involving the same respondent. A party who cites an unreported opinion shall attach a copy of it to the pleading, brief, or paper in which it is cited.

(Emphasis added). Clearly, Buckman could cite *Whittaker* if the doctrine of collateral estoppel applies. The County argued below—successfully before the hearing examiner and unsuccessfully before the circuit court—that collateral estoppel does

not take *Whittaker* outside Rule 8–114's general prohibition against citing unreported opinions. For reasons which follow, we hold that the doctrine of collateral estoppel does not apply in the case *sub judice.*

In *Whittaker,* an on-duty Montgomery County police officer was struck by a drunk driver, and as a result, sustained a back injury. Six months and two operations later, Whittaker returned to light duty in the Communications Division of the Police Department. After fifteen months, he returned to regular patrol duty.

Seventeen months later, Whittaker fell and reinjured his back while in pursuit of a suspect. He underwent further medical treatment but was nevertheless declared " '[un]fit . . . for routine duties as a policeman' " as the result of " 'a permanent disability of his back.' " *Whittaker,* slip op. at 1. His permanent partial disability was rated at between twenty-five and seventy-five percent.

Whittaker applied to the Disability Retirement Hearing Board of Montgomery County for a service-connected disability retirement and was granted a partial service-connected disability retirement on the basis of a twenty-five percent permanent partial disability. Whittaker then appealed to the Personnel Board which sustained the Hearing Board's decision. Whittaker noted an appeal to the Circuit Court for Montgomery County. After a hearing, the circuit court reversed the decision of the Personnel Board and found that Whittaker was entitled to full disability benefits.

Montgomery County filed an appeal to this Court and asked us to determine

"Whether the trial court erred in its construction of the Disability Retirement Act . . . in holding that a finding that an employee can no longer perform the tasks of the specific job to which assigned at the time of the disability requires a concurrent finding that said employee is totally and. permanently incapacitated and is thereby entitled to full disability retirement."

*Id.* at 2. We held that "an employee who is totally incapacitated for duty, though not totally disabled from any gainful employment, is entitled to full disability retirement benefits." *Id.* at 5.

Rule 8–114(b) provides an exception to Rule 8–114(a) if the unreported opinion is relevant to the doctrine of collateral estoppel. The doctrine of collateral estoppel, also referred to as issue preclusion, provides "that in a second suit between the same parties, even if the cause of action is different, any determination of *fact* that was actually litigated and was essential to a valid and final judgment is conclusive." *Welsh v. Gerber Prods., Inc.*, 315 Md. 510, 516, 555 A.2d 486 (1989) (emphasis added). In some cases, the party asserting collateral estoppel, either offensively or defensively, need not be a party to the first suit. *See id.* at 517–18, 555 A.2d 486. This has been termed "nonmutual" collateral estoppel. *Id.* Buckman attempted to use offensive nonmutual collateral estoppel to prevent the County from relitigating the issue of the interpretation of § 33–43(e).

In *Washington Suburban Sanitary Comm'n v. TKU Assoc.*, 281 Md. 1, 376 A.2d 505 (1977), the Court of Appeals set out a four-part test that must be satisfied in order for the doctrine of collateral estoppel to apply:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.* at 18–19, 376 A.2d 505 (*citing Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 45, 238 A.2d 100 (1968)). The County does not seriously dispute that the latter three parts of the test are satisfied. It only questions whether the issue in *Whittaker* is identical to the issue *sub judice*. We do not reach that question, however. Instead, we hold that the doctrine of collateral estoppel does not apply *sub judice* because the issue in *Whittaker* was one of law, not fact, and the claims are

"substantially unrelated." *See Welsh,* 315 Md. at 516, 555 A.2d 486; Restatement (Second) of Judgments § 28 (1980) (the doctrine of collateral estoppel is inapplicable where "the issue is one of law and . . . the two actions involve claims that are substantially unrelated"). We also hold that the hearing examiner correctly rejected *Whittaker* as precedent within the rule of stare decisis, or persuasive authority, because of Rule 8–114's clear direction proscribing such use. Our inquiry does not end here, however.

### B

■ The County next argues that holding Buckman is entitled to a full disability retirement without disturbing the hearing examiner's factual determination that Buckman was partially incapacitated for duty would be tantamount to a rewriting of § 33–43(e)(1). The County contends § 33–43(e)(1) clearly provides that an employee may be retired on a service-connected disability retirement if he is "totally incapacitated for duty *or* partially and permanently incapacitated for duty . . ." (emphasis added).

The County argues that since § 33–43(e)(2) requires that the employee seeking either type of service-connected disability be unable to perform the duties of the occupational classification, holding that an employee who cannot perform all of his job duties, but can nevertheless perform some of them, is totally incapacitated for duty would nullify the meaning of "or partially and permanently incapacitated for duty." This, the County argues, would be judicial legislation and would violate a well-established principle of statutory interpretation that a code provision should be "read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Police Comm'r v. Dowling,* 281 Md. 412, 419, 379 A.2d 1007 (1977); *Lockerman v. Prince George's County,* 281 Md. 195, 201, 377 A.2d 1177 (1977).

Of course, the cardinal rule of statutory interpretation is to ascertain and carry out the real legislative intent. *Dowling,* 281 Md. at 418, 379 A.2d 1007. The Montgomery County

Council declared the policy of the Montgomery County Employees' Retirement Act:

It is the policy of the county to maintain a system of retirement pay and benefits for its employees which is adequately funded and *insures employees sufficient income to enjoy during their retirement years.*

Montgomery County Code § 33–34 (1984, as amended) (emphasis added). The purpose of § 33–43(e) is analogous to that of the Maryland Work[ers'] Compensation Act, i.e., to provide compensation for loss of earning capacity to those employees who are no longer able to perform the duties of their job classification or the duties of a position of comparable status within the same department as a result of a service-connected disability, i.e., an accidental injury, occupational disease, or a condition aggravated while in the actual performance of duty. Clearly, § 33–43(e) is benevolent in nature and remedial in purpose. The Court of Appeals has on a number of occasions held that legislation of this kind should be liberally construed and all ambiguities resolved in favor of the injured employee in order to effectuate its benevolent purposes. *See Barnes v. Ezrine Tire Co.,* 249 Md. 557, 241 A.2d 392 (1968); *Bethlehem–Sparrows Point Shipyard, Inc. v. Hempfield,* 206 Md. 589, 112 A.2d 488 (1955).

Section 33–43(e) contains a patent inconsistency. The following example is illustrative. Employee A, a laborer, sustains a work-related injury which causes a fifty percent permanent partial disability and renders her unable to perform any job duties. Employee B, an administrator, sustains a more serious job-related injury which causes a seventy-five percent permanent partial disability. Because of B's occupational classification and job duties, however, the injury only prevents her from performing some job duties. Under the County's interpretation of § 33–43(e), A is granted a full service-connected disability retirement because she cannot perform any job duties, and B is only granted a partial service-connected disability retirement because she is unable to perform *enough duties to remain in her position.*

There is no question that A and B both lose their jobs as the result of a work-related injury. It is not in keeping with the benevolent nature of § 33–43(e) that A receives full benefits while B, more seriously injured, and equally unable to continue in her position, receives only partial benefits solely because she is able to perform some job duties. It is inconceivable that the Montgomery County Council could have intended such an inconsistent result when it enacted § 33–43(e).

Accordingly, we shall liberally construe § 33–43(e) and resolve its inconsistency in favor of Buckman. Under the hearing officer's construction of § 33–43(e), it would be rare, indeed, that an employee would be eligible for full benefits. The County could point to any one or more ministerial tasks routinely included in any job description which an employee, although incapacitated for *duty*, could nevertheless still perform. The County's attempt to skirt the intent of § 33–43(e) is ingenious, but nonetheless unavailing.

## C

Finally, the County argues the circuit court erred when it substituted its judgment for that of the Administrator, the hearing examiner, and the Board by reversing the prior findings that Buckman was only partially incapacitated for duty and instead holding that he was "totally incapacitated" for duty. In light of our holdings in sections A and B, *supra*, we do not need to address the County's contention.

■ In keeping with the benevolent nature and remedial purpose of § 33–43(e), Buckman is entitled to full service-connected disability retirement benefits under § 33–43(h)(1). We hold as a matter of law that under § 33–43(e), an employee who sustains a work-related injury, and otherwise qualifies for a service-connected disability retirement, is totally incapacitated for duty and therefore entitled to benefits under § 33–43(h)(1) if the extent of incapacity prevents the employee from continuing employment in his occupational classification or a position of comparable status within the same department, if

qualified. To hold otherwise would sanction a result clearly not intended by the county council.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**