636 A.2d 448

MONTGOMERY COUNTY, Maryland

v.

Paul A. BUCKMAN.

No. 40, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 17, 1994.

Reconsideration Denied March 4, 1994.

518

Charles L. Frederick, Asst. County Atty., (Joyce R. Stern, County Atty., Joann Robertson, Sr. Asst. County Atty.), all on brief, Rockville, for petitioner.

George Wiszynski (Carey R. Butsavage, Butsavage & Associates, P.C.), all on brief, Washington, DC, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

KARWACKI, Judge.

 This case arises from the application of Paul A. Buckman to Montgomery County (the "County") for "service-connected disability" retirement benefits provided for county employees by § 33–43 of the Montgomery County Code (1984, as amended). The Administrator of Montgomery County's retirement plan (the "Administrator") awarded Buckman a 15% partial and permanent service-connected disability retirement. Buckman appealed the Administrator's decision to the Montgomery County Merit System Protection Board (the "Board") which sustained the determination of the Administrator. Buckman then sought judicial review in the Circuit Court for Montgomery County. The circuit court reversed the Board's decision and awarded Buckman a total and permanent service-connected disability retirement. The Court of Special Appeals affirmed. *Montgomery County v. Buckman,* 96 Md. App. 206, 624 A.2d 1274 (1993). We granted certiorari to determine whether, under § 33–43 of the Montgomery County Code, a County employee who, as a result of an on-the-job injury, is unable to perform enough of the duties to keep the job with the County or a position of comparable status within the same department is entitled to total disability retirement benefits.[1]

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. An order of an administrative agency, such as the Montgomery County Merit System Protection Board, must be upheld on judicial review if it is not based upon an erroneous determination of law, and if the agency's conclusions reasonably may be based upon the facts proven. *Younkers v. Prince George's County,* 333 Md. 14, 633 A.2d 861 (1993) (quoting *People's Counsel v. Maryland Marine,* 316 Md. 491, 496–97, 560 A.2d 32, 34 (1989)); *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 338, 513 A.2d 893, 909 (1986). But a reviewing court is under no constraints in reversing an administrative decision that is

## I

Buckman began working for Montgomery County as a liquor store clerk in October 1978. In September 1985, Buckman sustained an accidental injury to his back while at work. After being placed on "light duty" for a short period of time, Buckman resumed his full duties. In January 1988, Buckman sustained an aggravation of his 1985 injury while lifting a case of liquor from a conveyor belt. Buckman underwent back surgery—a partial hemilaminectomy and excision of a herniated disc—a week later.

Buckman returned to work on light duty status in March 1988 and remained on light duty until the fall of 1989. After resuming full duties, Buckman experienced continuing soreness in his back, pain radiating down his left leg, and numbness in his left toes. At the suggestion of his neurosurgeon, John W. Barrett, M.D., Buckman, who was then 33 years of age, applied for a service-connected disability retirement on February 15, 1990. In a supplementary neurosurgical report, Dr. Barrett stated that "[i]n view of [Buckman's] ongoing symptoms I would feel that he should consider a disability retirement at this time. Unless he can be maintained in some occupation where he does not have to do repeated bending, lifting, etc., I feel certain that his symptoms will continue to recur." Dr. Barrett rated Buckman's disability as "Class 3—Slight limitation of functional capacity; capable of light work (33–55%)."

After Buckman applied for disability retirement, he was again placed on light duty. Donald R. Boelke, M.D. performed an independent medical examination of Buckman on

---

premised solely upon an erroneous conclusion of law. *People's Counsel,* 316 Md. at 497, 560 A.2d at 34–35. In the instant case, the issue of statutory construction was one of law and on judicial review the court's review is expansive. Once the court determines, however, that the administrative agency applied the proper standards prescribed by the statute at issue, judicial review of the agency's conclusion is then tested by the substantial evidence test. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990); *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984).

April 27, 1990. Dr. Boelke stated: "I do not feel [Buckman] would be able to return to the liquor business, lifting and particularly shifting boxes...." He added that resuming his usual duties would "be resultant in a recurrence of his severe symptoms." Dr. Boelke rated Buckman's disability at 15%, stating that "Mr. Buckman is not totally disabled but is markedly disabled particularly from heavy physical type of work." He then stated:

"I do not have much information on what type of work he could currently perform on a full time basis because I do not know his 'IQ' or intelligence or grading or academic records. However, based on the fact that he did have 30 credits in business administration at Montgomery College I feel he is a competent enough individual to at least be switched to a sedentary type occupation with business administration or personnel work or if he is suited for accounting or mathematics."

Clifford Hinkes, M.D. also rated Buckman's disability at fifteen percent after an earlier independent medical examination on November 16, 1988.

Buckman's responsibilities as a liquor store clerk included the sale of alcoholic beverages and related clerical and custodial duties. The County's job description for the position he held stated:

"The work involves varied duties in a liquor store including stocking shelves, cleaning and arranging merchandise, operating a cash register, providing information to customers, performing housekeeping duties, and performing related store operations. Employees are required to spend long hours standing and to lift/move cases of merchandise. Employees in this class assist Store Managers and Assistant Store Managers with the preparation of daily sales and inventory reports, making deposits and picking up cash from banks; they also help train other Liquor Store Clerks, may manage store operations for periods of short duration, and attempt to resolve any unusual problems that may arise...."

The minimum qualifications of the position required, among other things, the ability to "independently move by lifting and/or pushing single and case items weighing up to 40 pounds." Notwithstanding his disability, Buckman is capable of performing clerical work; typing; selling liquor; operating a cash register; answering questions and handling "fairly difficult questions when dealing with the public"; cleaning up merchandise depending on the extent of bending required; operating a vacuum cleaner depending on how heavy the vacuum cleaner; sweeping the floor; filling out special order forms, sales summaries and inventory lists; training part-time employees; making bank deposits; and operating an adding machine and calculator.

Buckman's service-connected disability retirement became effective August 11, 1990. The County did not give Buckman the option to work in another position. Although Buckman contacted the County's Handicapped Assistance Program and attempted to find alternative county employment, he was unsuccessful.

## II

This appeal focuses on the proper construction of § 33–43 pertaining to service-connected disability retirement eligibility and benefits. A County employee's eligibility for service-connected disability retirement is governed by § 33–43(e), which provides:

"(e) *Service-connected disability retirement.* A member may be retired on a service-connected disability retirement if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate result of an accident occurring ... while in the actual performance of duty; ... and the incapacity is likely to be permanent.

(2) The member is unable to perform the duties of the occupational classification to which assigned at the time

disability occurred or a position of comparable status within the same department, if qualified."

Section 33–43(h) specifies the amount of pension payable: "(h) *Amount of pension at service-connected disability retirement.* The yearly amount of pension payable upon retirement for service-connected disability equals:

(1) Total Incapacity.

a. 2 percent of final earnings, multiplied by years of credited service, up to a maximum of 36 years, plus sick leave credits, but not less than 66⅔ percent of final earnings, if the member is totally and permanently incapacitated.

. . . .

(2) Partial incapacity. 6 percent of final earnings for each 10 percent of permanent disability, but not less than 25 percent of final earnings, if the member is partially and permanently incapacitated. . . ."

■■■■ We begin our analysis with a brief review of the oft-stated rules of statutory construction. The cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature. *Stapleford v. Hyatt,* 330 Md. 388, 400, 624 A.2d 526, 531 (1993); *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988). To do so, the Court considers the language of an enactment and gives that language its natural and ordinary meaning. *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller,* 313 Md. 118, 124, 544 A.2d 764, 767 (1988); *Utt v. State,* 293 Md. 271, 286, 443 A.2d 582, 590 (1982). Thus, when there is no ambiguity or obscurity in the language of a statute, there is no need to look elsewhere to ascertain the intent of the legislative body. *In re Criminal Investigation No. 1–162,* 307 Md. 674, 685, 516 A.2d 976, 982 (1986); *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007, 1011 (1977); *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976); Furthermore, absent a clear intent to the contrary, a statute is

to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *State v. 149 Slot Machines,* 310 Md. 356, 361, 529 A.2d 817, 819 (1987); *Sibert v. State,* 301 Md. 141, 153, 482 A.2d 483, 489 (1984); *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984); *Police Comm'r v. Dowling,* 281 Md. at 419, 379 A.2d at 1011. Applying these principles to the language of § 33–43(e)(1), we see that an employee may be retired on a service-connected disability retirement if he or she is totally incapacitated for duty *or* partially and permanently incapacitated for duty. Thus, there are two distinct types of service-connected disability retirement: one for employees who are totally incapacitated for duty, and a second for employees who are only partially, yet permanently, incapacitated for duty. The language of § 33–43(e)(1) expressly distinguishes between these two types of service-connected disability retirees.

Furthermore, in order to be retired on a service connected disability retirement, the employee must also satisfy the requirement of § 33–43(e)(2). That section provides that the employee must be unable to perform the duties of the occupational classification to which the employee was assigned at the time the disability occurred or a position of comparable status within the same department, if qualified. Thus, regardless of the degree of incapacitation for duty, whether total or partial, the employee must also be unable to continue to perform his or her job duties.

Thus, the Montgomery County Council has unambiguously created a type of disability retirement for an employee, who because of a workplace accident, suffers from a permanent partial disability which prevents that employee from performing enough of the duties of the job held at the time the disabling accident occurred [2] but who is not totally incapacitated from employment.

---

2. or a position of comparable status

Buckman urges us to rule, as the Circuit Court did, that where an employee, due to a job-related injury, is "unable to perform enough of the duties of that job to remain in that position," he or she is entitled to the service-connected retirement benefits provided for an employee who is totally incapacitated for duty. We decline to do so. We similarly reverse the Court of Special Appeals' holding that an employee who sustains a work-place injury, and otherwise qualifies for a service-connected disability retirement, is totally incapacitated for duty and therefore entitled to total disability benefits if the extent of incapacity prevents the employee from continuing in his or her occupational classification or a position of comparable status. It does not follow that if an employee loses a job because of the inability to perform enough of the job duties, the employee is necessarily totally incapacitated for duty. Such a holding would render the provision for partial incapacitation superfluous because anytime an employee met the requirement for § 33–43(e)(2), that employee would necessarily be considered totally incapacitated. Because we will not construe a statute so that any word, phrase or clause is rendered superfluous, we will not construe § 33–43(e)(1) such that "partially incapacitated" refers to a status that does not exist.

We find support for this distinction in *City of Baltimore v. Hackley,* 300 Md. 277, 477 A.2d 1174 (1984). In *Hackley,* we were called upon to interpret two sections of Baltimore City's disability retirement law. Section 34(c) of Article 22 of the Baltimore City Code (1976 Ed., 1979 Supp.), the section that provided for ordinary retirement benefits, contained a requirement that the employee be "mentally or physically incapacitated for the further performance of the duties...." Section 34(e), the section that provided for special disability retirement benefits, contained a requirement that the employee be "totally and permanently incapacitated for the further performance of the duties...." [3] Baltimore City argued that the

---

**3.** The fact that the special disability benefits under § 34(e) are more generous than the ordinary benefits under § 34(c) gave rise to the

degree of incapacitation necessary for disability retirement benefits under § 34(c) was different from that necessary for disability retirement benefits under § 34(e). We, however, concluded that the word "totally," which modified the word "incapacitated" in § 34(e) of the Baltimore City Code, was redundant. Because the word incapacitated was not qualified in either § 34(c) or § 34(e), "[t]here is no indication that the requisite degree of incapacity for entitlement to disability benefits is anything less than total." We noted, however, that "[a]s used in § 34(e) an adjective such as 'partially' ... would have meaning when used with 'incapacitated.' It [the adjective 'partially'] would indicate something less than the absolute term." *Hackley,* 300 Md. at 289, 477 A.2d at 1180. Thus, in the instant case, the phrase "partially ... incapacitated for duty" in § 33–43(e)(1) means something less than "totally incapacitated for duty."

Our interpretation is further bolstered by virtue of § 33–43(h). Once an employee's entitlement to a service-connected disability retirement has been established, the amount of pension is determined according to § 33–43(h):

"(h) *Amount of pension at service-connected disability retirement.* The yearly amount of pension payable upon retirement for service-connected disability equals:

(1) Total Incapacity.

a. 2 percent of final earnings, multiplied by years of credited service, up to a maximum of 36 years, plus sick leave credits, but not less than 66⅔ percent of final earnings, if the member is totally and permanently incapacitated.

. . . .

(2) Partial incapacity. 6 percent of final earnings for each 10 percent of permanent disability, but not less than 25 percent of final earnings, if the member is partially and permanently incapacitated...."

controversy in *Hackley. 300 Md. at 281, 477 A.2d at 1176.* The difference between the two sections stemmed from the eligibility requirement under § 34(e) that the disability be job-related.

Here again, the Montgomery County Code provides for two different ways to compute service-connected disability benefits: one for employees totally incapacitated, and one for employees partially incapacitated. Under Buckman's interpretation, all disability retirees would be entitled to benefits under § 33–43(h)(1), thereby making § 33–43(h)(2) meaningless. Because we will not construe a statute so that any sentence or provision is rendered nugatory, we will construe § 33–43 so that a totally incapacitated employee receives benefits in accordance with § 33–43(h)(1) and a partially incapacitated employee receives benefits in accordance with § 33–43(h)(2).

We hold that the Montgomery County Council, by use of the words "partial" in § 33–43(h)(2) and "partially" in § 33–43(e)(1), intended a lesser amount of retirement benefits to a partially disabled employee.

### III

Buckman claims that our interpretation is unreasonable because it "would effectively render the total disability provisions meaningless since there are no cases short of coma or total paralysis in which the injured employee is unable to perform even one of his duties set forth on his job description." Respondent's Brief at 25. Buckman's concern, however, is unfounded because we have not said, nor has Montgomery County asserted, that every employee who is capable of performing even the most minor task would be ineligible for full disability retirement benefits. What we do say is this: § 33–43(e) provides two distinct forms of service-connected disability retirement—one for those employees who suffer total incapacity and another for those employees who suffer partial incapacity. It is the function of the administrative agency, the Board, to make the factual determination as to whether the employee is totally incapacitated for duty or partially incapacitated for duty. On judicial review, the court determines if the decision of the Board is arbitrary or capricious by examining whether there is substantial evidence in the record to support the factual finding of the administrative

agency. *Supervisor v. Asbury Methodist Home*, 313 Md. 614, 625–26, 547 A.2d 190, 195 (1988); *Balto. Lutheran High Sch. v. Emp. Sec. Adm.*, 302 Md. 649, 661–62, 490 A.2d 701, 708 (1985); *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309–10, 236 A.2d 282, 291–92 (1967). In the instant case, the Board's decision was supported by the required substantial evidence.

 Furthermore, even if our interpretation effectively makes it very difficult for an employee to collect disability retirement benefits for total incapacity, this result is no more strict than that ordinarily obtained under the Workers' Compensation system. Permanent total disability within the contemplation of the Workers' Compensation Act, Md.Code (1991 Repl.Vol.) § 9–101 *et. seq.*, of the Labor and Employment Article, means the incapacity to do work of any kind for which a reasonable market exists, and not merely an incapacity to perform that work which the employee was accustomed and qualified to perform before the injury. *Richard F. Kline, Inc. v. Grosh*, 245 Md. 236, 243–44, 226 A.2d 147, 151 (1967); *Mureddu v. Gentile*, 233 Md. 216, 220, 196 A.2d 82, 84 (1964); *Jewel Tea Co. v. Blamble*, 227 Md. 1, 3, 174 A.2d 764, 765 (1961); *Congoleum Nairn v. Brown*, 158 Md. 285, 287, 148 A. 220, 221 (1930); R.P. Gilbert and R.L. Humphreys, Jr., *Maryland Worker's Compensation Handbook* § 9.5 at 220–21. As we stated in *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 473, 265 A.2d 871, 874 (1970), " ' "[t]otal disability" in compensation law is not to be interpreted literally as utter and abject helplessness.' " (quoting 2 Workmen's Compensation Law, § 57.51). "An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." *Id.* at 474, 265 A.2d at 874–75 (citations omitted). In the instant case, Buckman is far from being utterly helpless and certainly capable of performing services for which a market exists. Dr. Boelke stated in his report that Buckman "is a competent enough individual to at least be switched to a sedentary type occupation with business administration or

personnel work or if he is suited for accounting or mathematics." An employee capable of performing marketable, sedentary duties, cannot be classified as totally disabled under the Workers' Compensation Act. *See Jewel Tea Co.*, 227 Md. at 5–6, 174 A.2d at 766; *Mureddu*, 233 Md. at 220, 196 A.2d at 84. Therefore, it is not unreasonable that Buckman be denied retirement disability benefits for total incapacity when he too can perform sedentary duties.

## IV

Buckman attempts to strengthen his position by arguing that the benevolent purpose and intent of § 33–43 requires an award of benefits for total incapacity. He quotes the County Council's declared policy in enacting the Montgomery County Employees' Retirement Act:

> "It is the policy of the county to maintain a system of retirement pay and benefits for its employees which is adequately funded and insures employees sufficient income to enjoy during their retirement years."

Montgomery County Code § 33–34 (1984, as amended). We agree that Montgomery County's system of retirement benefits is benevolent in purpose and intended to insure that its employees have "sufficient income to enjoy during their retirement years." The Montgomery County Council, however, has expressed its intent as to what amount of benefits are sufficient to satisfy those benevolent purposes. If employees are *totally* incapacitated for duty, the amount of disability retirement benefits that the County Council has deemed sufficient to satisfy the benevolent purpose of § 33–43(e) is at least 66⅔ percent of their final earnings. § 33–43(h)(1). If the employee, however, is only *partially* incapacitated for duty, then the amount of disability retirement benefits that the County Council has deemed to be sufficient to satisfy the benevolent purpose of § 33–43(e) is a function of the percentage of the employee's permanent disability, but at least 25 percent of final earnings. § 33–43(h)(2).

## V

■ Finally, Buckman argues that since the Court of Special Appeals decided the case of *Montgomery County v. Whittaker,* No. 1466, Sept. Term 1981 (unreported) on August 3, 1982, the Board has relied in several cases on the holding in that case to award total incapacity disability retirement to employees who were able to perform some of the duties of the position held by them when injured. Moreover, Buckman stresses that the Montgomery County Council has not amended § 33–43 in response to *Montgomery County v. Whittaker.* The answer to both prongs of this argument is found in Maryland Rule 8–114(a): "An unreported opinion of the Court of Appeals or Court of Special Appeals is neither precedent within the rule of stare decisis nor persuasive authority." With regard to the reliance on consistent Board interpretation of § 33–43 since *Whittaker,* it is well settled that administrative interpretation contrary to the clear and unambiguous meaning of a statute is entitled to no deference by a reviewing court. *Atlantic, Gulf v. Dep't of Assess. & T.,* 252 Md. 173, 183, 249 A.2d 180, 186 (1969). And, as to the lack of any amendment of § 33–43 by the County Council since *Whittaker,* it is probable that the Council was confident that its expressed intention in § 33–43(h) to distinguish in the award of a service-connected retirement benefit between retirees who were totally incapacitated for duty and those who were partially and permanently incapacitated for duty would be given effect by courts reviewing Board action until such time when binding appellate precedent was announced. Since the intermediate appellate court and the trial court failed to give effect to that expressed intention of the Montgomery County Council, we shall reverse the decision of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT WITH THE DIRECTION TO AFFIRM THE ORDER OF*

*THE MONTGOMERY COUNTY MERIT SYSTEM PRO-
TECTION BOARD; COSTS IN THE COURT OF SPECIAL
APPEALS, THE CIRCUIT COURT FOR MONTGOMERY
COUNTY AND IN THIS COURT TO BE PAID BY RE-
SPONDENT.*

ELDRIDGE, CHASANOW and ROBERT M. BELL, Judges, dissent.

They would affirm the Circuit Court for Montgomery County (Raker, J.) and the Court of Special Appeals for the reasons stated by the Court of Special Appeals in *Montgomery County v. Buckman,* 96 Md.App. 206, 624 A.2d 1274 (1993).