667 A.2d 922

**William A. SWEENEY**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 1738, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Nov. 29, 1995.

John B. Walsh, Jr. (Chen, Walsh, Tecler & McCabe, on the brief), Rockville, for appellant.

Linda B. Thall, Senior Assistant County Attorney (Charles W. Thompson, Jr., County Attorney, and Marc P. Hansen, Acting County Attorney, on the brief), Rockville, for appellee.

Argued before BLOOM, DAVIS and SALMON, JJ.

SALMON, Judge.

On February 13, 1990, appellant, William A. Sweeney, made application to Montgomery County for "service related disability" retirement benefits provided for County employees by § 33–43 of the Montgomery County Code (1984, as amended). The County's retirement system administrator (the Administrator) found that Mr. Sweeney was not disabled. Mr. Sweeney appealed the denial, and on December 13, 1990, hearing examiner Richard J. Sincoff conducted a hearing on the matter.

On January 14, 1991, Mr. Sincoff rendered a decision in which he found: 1) that Mr. Sweeney suffered a work-related disability due to an accident on December 10, 1986; 2) that as a result of the accident he suffered a 10 percent temporary-partial disability; and 3) that he should be re-evaluated in one year to determine whether his condition was permanent. Based on Mr. Sincoff's decision, the Administrator recommended to the County that Mr. Sweeney receive a "Temporary–Partial Service Connected Disability Retirement pursu-

ant to Section 33–43(e) [of the County Code] . . . [and] in accordance with § 33–43(h)(2) partial benefits" would be 25 percent of final earnings. The Administrator's recommendation was appealed by Mr. Sweeney to the Montgomery County Merit System Protection Board (the Board), which, on June 17, 1991, sustained the Administrator.

Mr. Sweeney then appealed to the Circuit Court for Montgomery County. The circuit court, on November 21, 1991, remanded the case to the Board for a *de novo* hearing on all issues. The Board, on March 4, 1993, held a second hearing. On June 21, 1993, the Board issued a written decision in which it "reaffirm[ed] its decision of June 17, 1991," thereby sustaining the Administrator's decision. Mr. Sweeney again appealed to the circuit court. This time the circuit court affirmed the decision of the Board, and Mr. Sweeney noted a timely appeal to this Court.

## I.

Appellant, age 54, became employed as a Montgomery County firefighter in 1966. On December 10, 1986, he was helping to extinguish a fire when an oxygen cylinder exploded. The force of the explosion hurled him some 20 feet. He was taken to Holy Cross Hospital where his shoulder, neck, and back were x-rayed. The x-rays were negative, and he was released.

In February 1987, about seven weeks post accident, appellant returned to his job as a Master Firefighter/Rescuer. The job specifications for this position cover more than three pages, but in general, the job is frequently strenuous. A firefighter must be well-conditioned and capable of lifting equipment weighing at least 100 pounds. Some duties are more sedentary. For instance, a Master Firefighter/Rescuer's duties include: conducting in-service training and classroom instruction for firefighters in firefighting evolutions, hazardous materials, and apparatus practices; providing training and instruction in the use of fire/rescue equipment and apparatus; attending training sessions; studying and analyz-

ing technical books and bulletins to assist in making recommendations for changes in existing programs and/or the development of new training programs; enforcing the County fire safety code and the State fire prevention code through inspections and testing; performing and leading personnel in the receipt of radio and telephone fire, rescue, and related calls; relaying emergency calls to the appropriate fire department, rescue squad, or other agencies; scheduling work assignments; and providing input to supervisors in evaluating the activities of personnel.

According to appellant, he returned to work even though he had significant and recurring physical problems while on duty. The main problems were intermittent blurry vision and pain in his neck, low back, and left shoulder.

About the same time that he returned to work, appellant began a fifteen hour per week part-time job as a bus driver. He worked at this part-time job for approximately two and one-half years—until September 1989.

Appellant stopped working as a Master Firefighter/Rescuer on October 10, 1989. On his last day of work, he experienced pain in his back and legs and was placed on leave. He retired from the fire department on February 1, 1991. Upon retirement, appellant began a 20–30 hour per-week job driving a twenty-five passenger bus. As of the March 4, 1993 hearing before the Board, he still held that job.

The exact amount of time appellant missed from work prior to his retirement is not in the record. The record does show that he missed 130 hours in 1987, and an additional 130 hours between March and June 1988. A form dated June 9, 1989, which was considered by the Board, shows that he had lost no time from work due to illness or accident since his last annual physical,[1] that he had been taking no drugs or medication, and that he currently was not on restricted duty.

---

1. The form did not indicate when Mr. Sweeney had last had his annual physical.

Mr. Sweeney testified before the Board, both in 1991 and 1993, that he did not believe that he could perform the duties of a Master Firefighter/Rescuer. He produced testimony and medical reports that, if believed, showed that as of the March 4, 1993 hearing he had constant pain in his lower back with radiating pain down the front of his thighs and intermittent tingling sensation in his right foot, which occasionally radiated up the back part of his right thigh and calf. He also had pain in his left shoulder. According to Mr. Sweeney's evidence, these physical problems were all caused by the December 10, 1986 accident.

When it rendered its June 21, 1993 decision, the Board had before it the reports of seven orthopedic surgeons (Harvey Mininberg, Eli Lippman, German Nader, Mark Rosenthall, Clifford Hinkes, E. Masoud Pour, and Erroll Bennett), two neurosurgeons (Mark Klein and Octavio Palanco), a neurologist (Brian Avin), and a family practitioner (Donald Frye). These experts evaluated Mr. Sweeney's physical condition, and to say the least, there was a wide range of opinions. For instance, Dr. Hinkes, in his last report, dated July 10, 1991, stated that he would recommend no "further medical treatment for Mr. Sweeney" because "he has exhausted all medical tests and treatment. . . ." Dr. Hinkes "would allow Mr. Sweeney to return to his old job as a fire fighter, full-time, full duty without restriction." Dr. Pour and Dr. Nader agreed with Dr. Hinkes. On the other hand, Dr. Rosenthall was of the view that Mr. Sweeney suffered from a herniated disc at the L–4–5 level due to the subject accident; that he would greatly benefit by surgery; but that even with surgery he would be "permanently disabled from functioning at his usual occupation as a firefighter in the future." Dr. Frye concurred with Dr. Rosenthall's opinion. Doctors Mininberg, Lippman, Klein, and Palanco all treated Mr. Sweeney and wrote reports that, broadly speaking, were more favorable to appellant's position than were the reports of Drs. Hinkes, Pour and Nader. In his last report, dated July 27, 1987, Dr. Mininberg opined that Mr. Sweeney had a chronic neck and low back problems; Dr. Lippman, in his report of October 30, 1987, said that his

findings in regard to Mr. Sweeney's low back problem were "very minimal in nature" but that Mr. Sweeney had "significant findings" in his neck and mid-back area (19½% total impairment of the whole body); Dr. Klein in his report of November 2, 1989, noted that appellant had a bulging disc at the L–3–4 level and that he should not return to work as a firefighter; Dr. Palanco, in a report dated March 6, 1990, said that a myelogram showed a central disc herniation at L–4–5 and opined that he did not foresee any early resumption by Mr. Sweeney of his duties as a firefighter.

Dr. Bennett evaluated Mr. Sweeney at the request of the Maryland Workers' Compensation Commission. His report was presented to the Board by the appellant. Dr. Bennett expressed an opinion in his report of October 8, 1991 that was somewhere between Dr. Hinkes's "no disability—no treatment needed" view and Dr. Rosenthall's "permanent injury—disc surgery needed" opinion. Dr. Bennett's October 16, 1992 report, the most recent reviewed by the Board, stated:

IMPRESSION: This is a rather involved and complex case. At the present time, the patient's level of activity is not prevented by his complaints. It is, perhaps, unlikely that even if he were to undergo a successful fusion, that he would be able to return to his former occupation. At the present time, a lot of his symptomatology and physical findings are the result of a muscular ligamentous limitations, secondary to chronic back pain.

RECOMMENDATIONS: The patient should recommence physical therapy and to be reevaluated at sometime when the therapist feels that he has reached maximum medical improvement. I feel the patient also needs to have a brace as this has been demonstrated to give him good relief of his symptoms. Further, I think reevaluation would be appropriate especially in view of the fact the patient has not reached maximum medical improvement at the present time and that he remains significantly partially disabled. I do not feel that it would be appropriate for this patient to undergo a spinal fusion at present. I think that his treating physician may want to review his condition 20 months after

the initial recommendation [of surgery] to see if any new findings are present.

*    *    *    *    *    *

Besides the testimony of Mr. Sweeney and the medical reports of the eleven physicians mentioned above, the Board received in evidence at its March 4, 1993 hearing an Order of the Workers' Compensation Commission of May 4, 1988. The Commission found that as a result of December 10, 1986, Mr. Sweeney suffered a *"PERMANENT PARTIAL DISABILITY:* 10% under 'Other Cases' industrial loss of use of the body as a result of the injury to the neck (5%) and low back (5%)." (Emphasis in the original.) Additionally, the Board had before it a transcript of Mr. Sweeney's testimony before Hearing Examiner Sincoff.

On June 21, 1993, the Board issued a five-page opinion in which it accurately reviewed 1) the procedural history of this case, 2) the testimony of Mr. Sweeney, and 3) a substantial number, but not all, of the reports of the eleven physicians. Although the reports of the physicians showed that there were serious differences of medical opinion, the Board simply found that "[t]here are conflicting medical reports as to the extent of [Mr. Sweeney's] injuries and whether surgery would correct the problem." The other findings of fact were that:

1. A review of the testimony as well as the exhibits fails to indicate that Mr. Sweeney has met evidentiary standards set forth in Section 33–43(e) of the Montgomery County Code.

2. A review of the testimony indicates that Mr. Sweeney has not met the burden of proof under Sections 2A–8 & 2A–10(b) of the Montgomery County Code.[2]

---

**2.** It would appear that Findings 1 and 2 are actually "ultimate findings," i.e., findings of law.

 The law has long distinguished between ultimate findings and basic findings. An ultimate finding is usually expressed in the language of a statutory standard—the rate is reasonable, the proposed action is in the public interest, the company has refused to bargain collectively. *An ultimate finding is typically mixed with law or policy.* *"The*

3.  Mr. Sweeney did sustain a work-related back injury.

4.  Mr. Sweeney has been working regularly as a bus driver.

5.  Surgery was recommended to Mr. Sweeney by doctors Palanco, Rosenthall, and Frye, but Mr. Sweeney has refused to have the surgery.

6.  Physical therapy was recommended to Mr. Sweeney in the latter part of 1989 and as recently as October 16, 1992 by Dr. Bennett but Mr. Sweeney "has refused" it.

7.  The reports of Dr. Pour dated September 23, 1992 and Dr. Bennett dated October 16, 1992 "add[ed] nothing new to this case."

In rendering its decision, the Board failed to indicate its view as to what proof a firefighter would need to present in order to show that he had a permanent total disability within the meaning of § 33–43(e) of the Montgomery County Code. The Board merely concluded: "It is the opinion of the Board, that the testimony indicates by a preponderance of the evidence that [Mr. Sweeney] is not entitled to a Total Permanent Service Connected Disability Retirement Benefit."

---

*ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact."* Helvering v. Tex–Penn Oil Co., 300 U.S. 481, 491 [57 S.Ct. 569, 574, 81 L.Ed. 755] (1937). "[S]uch an ultimate finding is not enough ... in the absence of a basic finding to support it ..." *United States v. Pierce Auto Lines,* 327 U.S. 515, 533 [66 S.Ct. 687, 696, 90 L.Ed. 821] (1946). "Basic findings" are somewhere between ultimate findings and a summary of each bit of evidence. A good formulation: "The decisions require a commission in a quasi-judicial proceeding to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings." *Capital Transit Co. v. Public Utilities Commission,* 213 F.2d 176, 187 (D.C.Cir.), *cert. denied* 348 U.S. 816, [75 S.Ct. 25, 99 L.Ed. 643] (1954). "Findings based on the evidence must embrace the basic facts which are needed to sustain the order." *Morgan v. United States,* 298 U.S. 468, 480 [56 S.Ct. 906, 911, 80 L.Ed. 1288] (1936). "[G]iven that the report contains all the essential findings required ... the Commission is not compelled to annotate to each finding the evidence supporting it." *United States v. Pierce Auto Lines,* 327 U.S. 515, 529 [66 S.Ct. 687, 695, 90 L.Ed. 821] (1946). *Administrative Law Treatise,* Davis, Kenneth Culp, § 14:27, p 124 (1980) (emphasis added).

## II.

Appellant makes two arguments in this case. First, he argues that he was entitled to a total permanent service connected disability and that the Board decision to award a temporary partial disability was "arbitrary, capricious ... unreasonable and unlawful" because it was not based on substantial evidence. Second, he contends that the Board failed to meet the legal requirement that it apprise the parties of the facts upon which it relied in reaching its conclusions. We shall address the second issue. For reasons explained below, we need not address the first issue.

## III.

Section 2A–10(a) and (b) of the Montgomery County Code is applicable to this case and provides:

**Sec. 2A–10.   Decisions.**

(a) *Content.* All recommendations and/or decisions of the hearing authority except rulings on preliminary matters or on motions or objections shall be in writing, based on evidence of record and *shall contain findings of fact, conclusions of law and an appropriate decision* and order; provided, however, any decision stipulated or consented to by the parties need only be reflected by an appropriate written order or consent decree.

(b) *Evidence required.* All recommendations and/or decisions of the hearing authority shall be based upon and supported by a *preponderance of the evidence of record.*

(Emphasis added.)

The role of agency findings of fact in judicial review is crucial. As we recently stated in *Baines v. Board of Liquor License Commissioners for Baltimore City,* 100 Md.App. 136, 143, 640 A.2d 232 (1994) (quoting *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984)):

Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to

support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of an agency action the court may not uphold the agency order unless it is *sustainable on the agency's findings and for the reasons stated by the agency.*

(Emphasis in original.) Courts of this State have consistently required that administrative agencies make findings of fact and conclusions of law. "At a minimum, one must be able to discern from the record the facts found, the law applied and the relationship between the two." *Forman v. Motor Vehicle Administration,* 332 Md. 201, 219–22, 630 A.2d 753 (1993); *Ocean Hideaway Condominium Association v. Boardwalk Plaza Venture,* 68 Md.App. 650, 656–57, 515 A.2d 485 (1986); *State Commission on Human Relations v. Malakoff,* 273 Md. 214, 229, 329 A.2d 8 (1974).

In *Baltimore Gas and Electric Co. v. Public Service Commission,* 75 Md.App. 87, 540 A.2d 820 (1988), we said:

[T]here are three principal reasons for the findings' requirement. The most obvious today is the overriding policy against government operating in secret.... Requiring articulation of the reasoning process evokes care on the part of the decider: "to set in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty. Often a strong impression of that, on the basis of the evidence, the facts are thus and so, gives way when it comes to expressing that impression on paper."

In the second place, a losing party has a right to know why he lost his case. The requirements of findings meets the elementary demand of those injured by an agency decision to be told "the reason why." Findings serve as an explanation to the parties as to the basis for the decision. Thirdly and the reason most frequently emphasized, is the role of the findings requirement in facilitating judicial review....

*Id.,* 75 Md.App. at 97–98, 540 A.2d 820 (quoting B. Schwartz, *Administrative Law,* § 140 (1976) (footnotes omitted)). *See*

*also Forman, supra,* 332 Md. at 220–221, 630 A.2d 753 (an appellate court cannot review an agency's decision under the "substantial evidence" or "arbitrary and capricious" standards unless the agency's opinion makes findings of fact on all material issues and clearly states the rationale behind the agency's action).

 The Board's findings of fact [3] plainly did not satisfy the requirement that the agency must "resolve all significant conflicts in the evidence." *Malakoff, supra; Forman, supra.* The most significant evidentiary conflict in this case was the wide divergence of opinion among the eleven doctors whose reports were reviewed by the Board. The Board made a "finding[ ] of fact" that "there are conflicting medical reports as to the extent of [Mr. Sweeney's] injuries and whether surgery would correct the problem" but made no attempt to articulate how it resolved those conflicts. Moreover, the Board failed to make any finding of fact that would support its conclusion that Mr. Sweeney's disability was temporary rather than permanent. Additionally, the Board did not say whether it believed Mr. Sweeney's testimony regarding his current physical problems, and the Board gave no indication of which, if any, of the duties of a Master Firefighter/Rescuer Mr. Sweeney was unable to perform. Lastly, the Board did not set forth its rationale for its conclusions that Mr. Sweeney's disability was partial as opposed to total.

Because we do not know the rationale for the Board's findings and because the Board failed to make crucial factual findings, our only viable alternative is to remand the case to the Board. The clumsy alternative to remand would be "to *read* the record, *speculate* upon the portions which were probably believed by the board, *guess* at the conclusions drawn from the credited portions, *construct a basis* for decision, and *try to determine* whether a decision thus arrived at

---

3. Mr. Sincoff, in his January 14, 1991 decision, made a much more detailed finding of fact than did the Board in its June 21, 1993 decision. The Board did not, however, adopt those reasons. While the Board did "reaffirm" its decision of June 17, 1991, that earlier decision literally made no findings of fact and did not adopt those found by Mr. Sincoff.

should be sustained." *Mortimer v. Howard Research,* 83
Md.App. 432, 446, 575 A.2d 750, *cert. denied,* 321 Md. 164, 582
A.2d 499 (1990) (quoting *Gough v. Board of Zoning Appeals,*
21 Md.App. 697, 702, 321 A.2d 315 (1974)) (emphasis in origi-
nal). As we pointed out in *Mortimer, supra,* the "clumsy
alternative" is unacceptable because it would force a reviewing
court to perform duties that the law assigns to the administra-
tive agency. *Id.* For these reasons, we decline to answer the
question raised by appellant as to whether the Board's deci-
sion was "arbitrary, capricious ... unreasonable and unlaw-
ful."

Upon remand, the Board should prepare legally adequate
findings of fact and conclusions of law. In performing this
function, we strongly recommend that the Board follow the
format set forth in *Redden v. Montgomery Co.,* 270 Md. 668,
685–86, 313 A.2d 481 (1974), viz:

[A]n acceptable format for the Board's findings and conclu-
sions ... would be to set out its finding that the particular
requirement had, or had not, in its opinion, been established
by the applicants and then add, "because the Board finds
the following facts to be true."

(Insert the facts here)

"and does not accept as true the following testimony [or
evidence]."

(Insert the rejected testimony [or evidence] here).

In this way, a court on appeal will be able to ascertain
whether there was sufficient evidence to support the
Board's findings and conclusions.

## IV.

Because the issue will necessarily arise on remand, we
must address the meaning of the term "total incapacity for
duty" as used in § 33–43(e). In this regard, Mr. Sweeney
contends that he should be classified as totally disabled for
duty if the evidence shows that "he cannot perform the
regular and routine requirements" of a Master Firefight-
er/Rescuer. The County does not say in its brief what must

be proven in order to be eligible for a total disability but it does expound on the meaning of "partial incapacity for duty." The County states, "[A] finding of a partial disability is appropriate where the evidence shows that the claimant is unable to perform all of the duties of the job but is not totally disabled from employment." In oral argument, the County clarified its position by asserting that an employee would not be totally incapacitated for duty unless he could perform no job (for which a reasonably stable market exists) anywhere. If the County's position were to obtain, whether Mr. Sweeney was "totally incapacitated for duty" would be determined by ascertaining whether he was employable in any job—not whether he could perform any of the tasks required of a Master Firefighter/Rescuer (or a position of comparable status within the department).

Section 33–43(e) of the Montgomery County Code (1984, as amended) provides, in pertinent part:

*Service-connected disability retirement.* A member may be retired on a service-connected retirement if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate result of an accident occurring, . . . while in the actual performance of duty; that the incapacity is not due to willful negligence, and the incapacity is likely to be permanent. In extenuating circumstances, the administrator may waive the requirement that a member's incapacity is likely to be permanent and may approve a temporary disability retirement for one (1) or more one-year periods until the capacity is either removed or it becomes apparent that it is likely to be permanent.

(2) The member is unable to perform the duties of the occupational classification to which assigned at the time disability occurred or a position of comparable status within the same department, if qualified.

Once it is determined the employee is eligible for a service-connected disability retirement, the amount of the pension is determined according to § 33–43(h), which provides:

(1) Total Incapacity.

a.  2 percent of final earnings, multiplied by years of credited service, up to a maximum of 36 years, plus sick leave credits, but not less than 66⅔ percent of final earnings, if the member is totally and permanently incapacitated.

\* \* \*

(2) Partiaɩ incapacity.  6 percent of final earnings for each 10 percent of permanent disability, but not less than 25 percent of final earnings, if the member is partially and permanently incapacitated. . . .

As already noted, we do not know what criteria the Board used in making the determination that appellant was not totally incapacitated.  Moreover, case law provides only limited guidance in this regard.

In *Montgomery County v. Buckman,* 96 Md.App. 206, 208, 624 A.2d 1274 (1993) (*Buckman I* ), one of the issues presented was:

> Is an employee who sustains an occupational injury and otherwise meets the requirements of Montgomery County Code § 33–43(e) entitled to full disability retirement benefits under § 33–43(h)(1) if he is incapacitated for duty, yet capable of performing certain job duties?

We answered that question in the affirmative.  *Id.,* 96 Md. App. at 217–18, 624 A.2d 1274.

The *Buckman* case concerned a County employee who worked as a liquor store clerk.  His duties included lifting liquor cases and other merchandise weighing up to 40 pounds. In addition, he operated a cash register, provided information to customers, and performed other clerical duties.  *Buckman,* 96 Md.App. at 210, 624 A.2d 1274.  The hearing officer found that, because of a back injury, the employee could not perform all the duties of a liquor store clerk and awarded the employee a 35 percent permanent partial disability.  The Board affirmed, and the employee appealed, contending that even though he could perform some of the duties of a liquor store clerk he was nevertheless totally incapacitated because he could not perform all the duties necessary to maintain his

employment as a clerk. The circuit court agreed with the employee, reversed the Board, and ordered an award of full disability retirement benefits. *Id.,* 96 Md.App. at 211, 624 A.2d 1274.

In *Buckman I,* we affirmed and stated:

Section 33–43(e) contains a patent inconsistency. The following example is illustrative. Employee A, a laborer, sustains a work-related injury which causes a fifty percent permanent partial disability and renders her unable to perform any job duties. Employee B, an administrator, sustains a more serious job-related injury which causes a seventy-five percent permanent partial disability. Because of B's occupational classification and job duties, however, the injury only prevents her from performing some job duties. Under the County's interpretation of § 33–43(e), A is granted a full service-connected disability retirement because she cannot perform any job duties, and B is only granted a partial service-connected disability retirement because she is unable to perform *enough duties to remain in her position.*

There is no question that A and B both lose their jobs as the result of a work-related injury. It is not in keeping with the benevolent nature of § 33–43(e) that A receives full benefits while B, more seriously injured, and equally unable to continue in her position, receives only partial benefits solely because she is able to perform some job duties. It is inconceivable that the Montgomery County Council could have intended such an inconsistent result when it enacted § 33–43(e).

Accordingly, we shall liberally construe § 33–43(e) and resolve its inconsistency in favor of Buckman. Under the hearing officer's construction of § 33–43(e), it would be rare, indeed, that an employee would be eligible for full benefits. The County could point to any one or more ministerial tasks routinely included in any job description which an employee, although incapacitated for *duty,* could nevertheless still

perform. The County's attempt to skirt the intent of § 33–43(e) is ingenious, but nonetheless unavailing.

(Emphasis in original.)

Our holding in *Buckman I* was that an employee would be considered totally disabled for duty within the meaning of § 33–43(e) if he could not perform enough of his duties to remain employed at his job or in a position of comparable status within the department.

The Court of Appeals reversed our holding. *Montgomery Co. v. Buckman,* 333 Md. 516, 636 A.2d 448 (1994) (*Buckman II* ). The Court of Appeals interpreted the term "partially incapacitated for duty," as used in § 33–43(e)(1), as meaning "something less than totally incapacitated for duty." The Court held that by enacting § 33–43(e) the County had

unambiguously created a type of disability retirement for an employee, who because of a workplace accident, suffers from a permanent partial disability which prevents that employee from performing enough of the duties of the job held at the time the disabling accident occurred[2] but who is not totally incapacitated from employment.

[2] or a position of comparable status

*Montgomery Co. v. Buckman,* 333 Md. at 524, 636 A.2d 448.

The Court of Appeals held in *Buckman II* that even though Buckman lost his job as a liquor store clerk because his back injury made him incapable of performing his job (or a position of comparable status within the department) he was still only partially disabled from duty because he could still perform some of a liquor store clerk's more sedentary clerical duties.

With the above in mind, we must examine appellant's argument. As noted above, Mr. Sweeney's proposed test as to whether an employee is "totally incapacitated for duty" within the meaning of § 33–43(e) is whether the employee can "perform the regular and routine requirements" of his position. If the answer to that question is in the affirmative, appellant contends that the worker is totally incapacitated for duty. This proposed test was implicitly rejected by the Court of Appeals in *Buckman II,* and we explicitly reject it. In

*Buckman II,* one of the liquor store clerk's regular and routine duties was to "lift cases of merchandise." 333 Md. at 521, 636 A.2d 448. The employee lost his job because he could not perform that job duty. The *Buckman II* Court nevertheless upheld the Board's finding that the employee was partially rather than totally disabled because he could still perform sedentary duties connected with his job.

It is safe to say that under appellant's formulation few employees would ever be deemed "partially incapacitated for duty." The only employee who could meet appellant's proposed test would be those who could do all the regular and routine duties associated with his job but nevertheless somehow lost his job due to disabilities that incapacitated him from performing some non-routine job functions. Appellant cites no case law to support his position, and nothing in the language used in § 33–43(e) suggests that the Montgomery County Council intended the phrase "partially incapacitated for duty" to apply only to such an exclusive group.

In interpreting § 33–43(e)(1), it is important to note that the words "total incapacity" and "partial incapacity" are followed by the words "for duty." Section 33–43(d)(2) makes it clear that the term "for duty" applies to the job the employee performed "at the time disability occurred or to a position of comparable status within the same department, if qualified." Thus, in determining whether an employee is totally incapacitated for duty, the focus should not be (as the County contends) on jobs the employee can or cannot do outside the Montgomery County Fire Department.

Moreover, to prove total incapacity under § 33–43(e), the employee need not prove that he cannot perform even the most minor functions required in the job held at the time of disability. This was explained in *Buckman II:*

> Buckman claims that our interpretation is unreasonable because it "would effectively render the total disability provisions meaningless since there are no cases short of coma or total paralysis in which the injured employee is unable to perform even one of his duties set forth on his job

description." Respondent's Brief at 25. Buckman's concern, however, is unfounded because we have not said, nor has Montgomery County asserted, that every employee who is capable of performing *even the most minor task would be ineligible for full disability retirement benefits.* What we do say is this: § 33–43(e) provides two distinct forms of service-conrected disability retirement—one for those employees who suffer total incapacity and another for those employees who suffer partial incapacity. It is the function of the administrative agency, the Board, to make the factual determination as to whether the employee is totally incapacitated for duty or partially incapacitated for duty. On judicial review, the court determines if the decision of the Board is arbitrary or capricious by examining whether there is substantial evidence in the record to support the factual finding of the administrative agency.

*Id.,* 333 Md. at 525, 636 A.2d 448 (citations omitted, emphasis supplied.)

We interpret the term "totally incapacitated for duty" as the term is used in § 33–43(e) as meaning incapacitated from performing *any* of the important functions of the job held at the time the disability occurred.[4] A person is "partially incapacitated for duty" within the meaning of § 33–43(e) if he or she can perform some but not all of the important functions of the job held at the time the disability occurred.

It is the Board's obligation to determine what those important functions are and whether Mr. Sweeney is capable of performing any of them. Upon remand, in the Board's discretion, additional evidence may be considered regarding whether appellant is permanently incapacitated from duty.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS TO REMAND THE CASE TO THE MONTGOMERY COUNTY MERIT SYSTEM PROTECTION BOARD FOR FURTHER PROCEEDINGS NOT INCON-**

---

**4.** Or a position of comparable status, if qualified.