893 A.2d 1144

**GRAND BEL MANOR CONDOMINIUM**

v.

**Graciano P. GANCAYCO et al.**

**No. 2529, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

March 2, 2006.

472

Christopher Hitchens (Thomas Schild Group, LLP, on brief), Silver Spring, for appellant.

H.M. Lynn Primo, Alexandria, VA, for appellee.

Panel EYLER, JAMES R., KENNEY, KRAUSER, JJ.

KRAUSER, J.

Appellee, Dr. Graciano P. Gancayco, owns a unit in the Grand Bel Manor Condominium. Although the Condominium is a residential complex, Dr. Gancayco uses his unit as a medical office, pursuant to a special exception granted by the Montgomery County Board of Appeals ("the Board"). That exception has been modified once, and he now seeks to modify it again. Originally, the exception permitted him to practice pediatric medicine from his unit provided that he was the only doctor to practice there and that he provided, in accordance with the County's zoning ordinance, four parking spaces for patients. It was later modified, however, to allow another doctor to practice with him, so long as he and the other doctor did not practice at the same time.

When that doctor left the practice, Dr. Gancayco requested another modification of his special exception, this time, to permit two other doctors, his son and daughter-in-law, to practice at his office and to allow two of the three of them to practice there at the same time. To grant that request, the Board would have had to waive the parking requirements for

"medical practitioners' offices" in § 59–G–2.36(b)(5) of the County's zoning ordinance. That subsection incorporates by reference the parking requirements for an "Office, medical practitioner's" found in § 59–E–3.7. Section 59–E–3.7 mandates "[n]ot less than 4 parking spaces for each practitioner occupying or using" a medical office. To place these two subsections in legislative context, Section 59–G–2.36(b)(5) is a subsection of Article 59–G, the special exceptions article of the County's zoning ordinance, while 59–E–3.7 is a subsection of Article 59–E, the off-street parking and loading article of that ordinance.

Before the Board ruled on his request, the Montgomery County Department of Permitting Services (DPS), over the protest of appellant, the Grand Bel Manor Condominium, granted Dr. Gancayco a waiver of the parking requirements of § 59–E–3.7. In granting that waiver, it did not address, however, what effect, if any, the "59–E" waiver would have on appellee's "special exception" parking requirements under Article 59–G.

While acknowledging that DPS had the authority to waive the parking requirements of § 59–E–3.7, the Board held that DPS had no authority to waive the parking requirements of § 59–G–2.36(b)(5). In other words, DPS did not have a legal right to alter the terms of a special exception granted by the Board under Article 59–G. In fact, it declared that neither it nor DPS had the authority to waive "59–G" parking requirements. It then denied Dr. Gancayco's request for a modification of his special exception because he had only four parking spaces, and not the eight required, when two doctors practice together.

Disagreeing with the Board's decision, the Circuit Court for Montgomery County reversed the Board and ordered it to grant the special exception modification requested by Dr. Gancayco. That, in turn, prompted the Grand Bel Manor Condominium to note this appeal, presenting three questions for our review. As set forth in its brief, they are:

I.    Did the Board of Appeals correctly determine that the Waiver of Parking requirements issued by the Department of Permitting Services did not nullify the requirement from the zoning code for 8 marked parking spaces?

II.   Did the Circuit Court err in not holding a hearing as required by Maryland Rule 7–208?

III.  Did the Circuit Court exceed its role under the "substantial evidence" standard, when it reversed the Board of Appeals' denial of Dr. Gancayco's special exception without reviewing evidence and making findings regarding the additional statutory criteria required for granting the special exception?

Because we conclude that the Board did not err in denying Dr. Gancayco's petition on the grounds that DPS could not waive the parking requirements of § 59–G–2.36(b)(5), we reverse the judgment of the circuit court and remand to the circuit court for entry of judgment affirming the decision of the Board.  Having so held, we need not address appellant's second and third questions.

## BACKGROUND

Dr. Gancayco owns a unit in the Grand Bel Manor Condominium at 3800 Bel Pre Road in Silver Spring.  The Grand Bel Manor is a residential condominium and is zoned R–20. The Condominium's bylaws assign one parking space per unit and designate the remaining spaces for the use of unit owners on a "first come, first serve" basis.

In 1970, the Board of Appeals granted Dr. Gancayco's request for a special exception, permitting him to operate a medical office from his unit, provided that he was the only doctor practicing at that location and that four parking spaces were "allocated" and "designated" for his patients.  In 1977, the Board granted Dr. Gancayco's request for a modification of his special exception so that an additional doctor, Dr. R.A. Camargo, could practice there.  It did so provided that no other doctor would be permitted to practice at that location

and that only one doctor could practice there at any given time.

When Dr. Camargo left the practice, Dr. Gancayco's son, Dr. Robert Gancayco, and his daughter-in-law, Dr. Menkina Gancayco, joined it. In October 2001, DPS notified Dr. Gancayco that he was violating the terms of his special exception. DPS found that he had only three parking spaces, not four, "marked for patients" and that, instead of Dr. Camargo, two other doctors, his son and daughter-in-law, were practicing there. In that notice, DPS directed appellee to provide at least four parking spaces "marked and reserved" for patients and to have his special exception modified so that it reflected that Dr. Camargo had been replaced by his son and daughter-in-law.

Citing a need for a minimum number of guest spaces, appellant refused to give Dr. Gancayco the four additional parking spaces he would need if two doctors practiced medicine in his unit at the same time. Five months after the violation notice, in March 2002, Dr. Gancayco petitioned the Board for a modification of his special exception that would permit his son and daughter-in-law to practice at his unit; allow two doctors to practice there at the same time; and change the permitted hours of operation.[1] While acknowledging, in his petition, that the Condominium was "unwilling" to give him the four additional parking spaces he would need if two doctors were to practice there at the same time, he stated that he would seek a waiver from DPS of those parking requirements. And he obtained just such a waiver from DPS, before the Board could act on his petition. Over appellant's objection,[2] DPS granted Dr. Gancayco's request for a waiver

---

1. Dr. Gancayco later dropped his request to change the hours.

2. Our record does not include the record of the proceeding before DPS. It appears that Alec Lictman, the president of the Grand Bel Manor Condominium Association, testified before DPS against Dr. Gancayco's request for a waiver. He also wrote a letter in which he stated that he "would like to appeal" the waiver DPS granted. There is no indication of what became of that "appeal."

of § 59–E–3.7. That subsection requires, as noted, that all medical offices have at least four parking spaces for each physician "occupying or using" an office.

Thereafter, when the Board addressed this issue, appellant reasserted its opposition to Dr. Gancayco's modification request. Although it did not object to allowing one doctor at a time to practice in the office, it argued that the increased traffic from having more than one doctor practice there at the same time overburdened the condominium's parking resources. In support of its position, appellant submitted several letters to the Board from residents who complained that Dr. Gancayco's patients took all the visitors' parking spaces around the office and often parked in spaces reserved for residents. The residents further complained that patients often brought children with them and these children frequently played unsupervised outside the office. Also participating in this proceeding before the Board was the Office of the People's Counsel.

The Board rejected Dr. Gancayco's argument that DPS's waiver of the parking requirements in § 59–E–3.7 also waived the parking requirements in § 59–G–2.36(b)(5). It asserted that Dr. Gancayco's position would render meaningless the additional parking requirements of § 59–G–2.36(b)(5). Moreover, "[i]t is manifest in the Zoning Ordinance," the Board declared, "that the legislature empowered the Board alone to approve special exceptions." Indeed, it observed, "Nowhere in the law is the power to waive the specified statutory standards granted to DPS." What is more, it pointed out, "There is nothing in Section 59–G–2.36, or elsewhere in the Zoning Ordinance, that suggests" that even the Board has "this power."

Dr. Gancayco then filed a petition in the circuit court, requesting review of the Board's decision. Concluding that the waiver by DPS of § 59–E–3.7 was "applicable" to § 59–G–2.36(b)(5), the circuit court reversed the Board's denial of Dr. Gancayco's petition, without a hearing, and ordered it to grant

Dr. Gancayco's request for modification of his special exception.

## DISCUSSION

Appellant contends that the circuit court erred in holding that the waiver by DPS of the parking requirements of § 59–E–3.7 acted as a waiver of the parking requirements in § 59–G–2.36(b)(5). Section 59–E–3.7 of Article 59–E, the off-street parking and loading article of the zoning ordinance, governs all medical offices and requires that there be

[n]ot less than 4 parking spaces for each practitioner occupying or using such office.

Section 59–G–2.36(b)(5) of Article 59–G, the special exceptions article of the zoning ordinance, addresses medical offices, which by special exception, operate in residential zones. It provides:

Off-street parking spaces shall be provided as required in article 59–E of this chapter which shall be in addition to those spaces required for the residential portion of the building and shall be specifically designated for the use of the patients of the medical practitioners.

The Board's denial was proper, appellant argues, because DPS had no authority to change the conditions of a special exception. The Board alone has that authority, appellant insists. Moreover, § 59–G–2.36(b)(5) creates separate parking requirements for special exceptions, appellant maintains, even though it incorporates the parking requirements of § 59–E–3.7. Thus, a waiver of § 59–E–3.7 does not act as a waiver of § 59–G–2.36(b)(5).

In reviewing a decision of an administrative agency, our role "is precisely the same as that of the circuit court." *Dep't of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). We review only the decision of the administrative agency itself. *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996). We "do not evaluate the findings of fact and conclusions of law made by

the circuit court." *Consumer Prot. Div. v. Luskin's, Inc.,* 120 Md.App. 1, 22, 706 A.2d 102 (1998), *rev'd in part on other grounds,* 353 Md. 335, 726 A.2d 702 (1999). "Thus, whether the circuit court applied the wrong standard of review is of no consequence if our own review satisfies us that the Board's decision was proper." *Giant Food, Inc. v. Dep't of Labor, Licensing & Regulation,* 124 Md.App. 357, 363, 722 A.2d 398 (1999), *rev'd on other grounds,* 356 Md. 180, 738 A.2d 856 (1999). To conduct a proper inquiry of an administrative agency's decision, we "'must be able to discern from the record the facts found, the law applied and the relationship between the two.'" *Sweeney v. Montgomery County,* 107 Md.App. 187, 197, 667 A.2d 922 (1995)(quoting *Forman v. Motor Vehicle Admin.,* 332 Md. 201, 221, 630 A.2d 753 (1993)).

■ But "[a]ppellate review of an administrative agency's decision is narrow." *Finucan v. State Bd. of Physician Quality Assurance,* 151 Md.App. 399, 411, 827 A.2d 176 (2003), *aff'd,* 380 Md. 577, 846 A.2d 377 (2004), *cert. denied,* 543 U.S. 862, 125 S.Ct. 227, 160 L.Ed.2d 103 (2004). "We are ' "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." ' " *Id.* (citations omitted).

■■ However, "'the expertise of the agency in its own field should be respected.'" *Id.* (citation omitted). Therefore, "'an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.'" *Id.* (citation omitted). The Montgomery County zoning ordinance vests the Board with the power to grant special exceptions. Section 59–A–4.11 provides, in part:

The County Board of Appeals may hear and decide the following matters as provided in Section 2–112:

(a) Petitions for special exceptions, subject to articles 59–G–1 and 59–G–2.

■   No such power, as the Board observed, was granted to DPS. But the zoning ordinance does give DPS authority to grant waivers of certain parking requirements. Section 59–E–3.7 provides a schedule of parking requirements for various land uses. Specifically, it provides that, for a medical office, there must be at least four parking spaces for each doctor practicing there. That requirement is applicable to medical offices generally, whether that medical office is in an office park or in a residential zone, and may be waived by DPS under § 59–E–4.5, which provides:

The Director, Planning Board, or Board of Appeals may waive any requirement in this Article not necessary to accomplish the objectives in Section 59–E–4.2, and in conjunction with reductions may adopt reasonable requirements above the minimum standards.

But the language of the zoning ordinance clearly indicates that DPS's authority to waive parking requirements extends only to the requirements of Article 59–E. Obviously, § 59–G–2.36(b)(5) is located in Article 59–G, not Article 59–E. Thus, DPS can waive the parking requirements of § 59–E–3.7, but not those of § 59–G–2.36(b)(5). That legislative limitation was acknowledged by DPS in a letter from its Permitting Services Manager to Dr. Gancayco's attorney.

In that letter, the Permitting Services Manager wrote:

DPS can waive requirements under 59–E, Off–Street Parking and Loading, however, we do not waive those requirements for special exceptions. Any waiver from any standards under 59–G or 59–E for uses under special exception would require modification from the County Board of Appeals.

And, that position was reiterated by DPS in granting the requested waiver. The waiver states that it is "conditioned upon the approval of the Special Exception Modification . . . by the Board of Appeals." In sum, both the Board and DPS believe that DPS's decision is not dispositive of Dr. Gancayco's "special exception" parking requirements. Moreover, even if the two bodies disagreed, the Board's interpretation, as the

agency which administers Article 59–G, would not only take precedence over DPS's but it would be entitled to "considerable weight by reviewing courts," which, we believe, it did not receive below.

Moreover, the circuit court's conclusion that DPS's waiver of the Article 59–E parking requirements constituted a waiver of the Article 59–G parking requirements may, in effect, grant by judicial decree DPS more power to alter a special exception than the Board itself possesses. The Board has no express power to waive the parking requirements of § 59–G–2.36(b)(5), and the absence of such language casts doubt on whether it may do so. In contrast to other provisions in Division 59–G–2 where the Board is expressly permitted to waive certain requirements in granting a special exception, the legislature did not give the Board authority to waive the parking requirements of § 59–G–2.36(b)(5). For example, to obtain a special exception for an accessory apartment, § 59–G–2.00(b)(2) states:

> Except in the case of an accessory apartment that exists at the time of the acquisition of the home by the applicant, one year must have elapsed between the date when the owner purchased the property (settlement date) and the date when the special exception becomes effective. **The Board may waive this requirement upon a finding that a hardship would otherwise result.**

(Emphasis added).

Other sections that give the Board explicit authority to waive a provision include § 59–G–2.00(c)(3); § 59–G–2.21(c); § 59–G–2.24(b); and § 59–G–2.29(j)(3). Applying the time-honored canon of statutory construction that—"where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances," *Mossburg v. Montgomery County,* 329 Md. 494, 505, 620 A.2d 886 (1993),—we must conclude that § 59–G–2.36(b)(5) does not grant the Board the right to waive the parking requirements of that subsection. To hold that DPS

can waive the parking requirements of that subsection, over which it has no jurisdiction, by waiving the parking requirements of § 59–E–3.7, would thus grant DPS more authority, in this instance, over the standards of a special exception than the Board has—a patently absurd result.

Furthermore, we note that, while § 59–G–2.36(b)(5) does incorporate the parking requirements of Article 59–E, it creates separate and distinct parking requirements for medical offices in residential zones, which are independent of the Article 59–E parking requirements. Not only do those requirements mandate four parking spaces per practitioner, as § 59–E–3.7 does, but they also mandate that those spaces be in addition to the spaces needed for residential purposes and that they be "specifically designated" for patient use. If we were to construe § 59–G–2.36(b)(5) as Dr. Gancayco requests and the circuit court did, we would be rendering those additional parking requirements in § 59–G–2.36(b)(5) surplusage and meaningless, in violation of yet another canon of statutory construction that "a statute is to be read so that no word, phrase, clause, or sentence is rendered surplusage or meaningless." *Mayor and Council of Rockville v. Rylyns Enters.*, 372 Md. 514, 550, 814 A.2d 469 (2002).

■ Furthermore, Dr. Gancayo's claim undermines the very purpose of a special exception. A special exception allows a use as a right only if specific statutory criteria have been fulfilled. *Mossburg v. Montgomery County,* 107 Md. App. 1, 7, 666 A.2d 1253 (1995)(citing *Ash v. Rush County Bd. of Zoning Appeals,* 464 N.E.2d 347, 350 (Ind.App. 1 Dist. 1984)). An agency, that has no jurisdiction over special exceptions cannot be permitted to, in effect, waive the very criteria that justified the creation of the special exception in the first place.

Finally, Dr. Gancayco would have us approve the circuit court's application of a decision by DPS to his special exception requirements when that decision did not take into account Article 59–G or, more specifically, § 59–G–2.36(b)(5). In other words, we are asked to ignore Montgomery County's desire, in

enacting Article 59–G, that there be certain restrictions on a physician's office in an R–20 zone. This, we should not and cannot do.

**JUDGMENT OF THE CIRCUIT COURT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF JUDGMENT AFFIRMING THE DECISION OF THE MONTGOMERY COUNTY BOARD OF APPEALS.**

**COSTS TO BE PAID BY APPELLEE.**